UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

CIVIL ACTION NO. 2007-261 (WOB)

MARION MITCHELL                                                                                   PLAINTIFF

VS.                                      **OPINION and ORDER**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY                                      DEFENDANT


This matter is before the court on the motion for summary judgment of the plaintiff (Doc. 9) and the cross-motion for summary judgment of the defendant (Doc. 10).

In reviewing the decision of the ALJ in Social Security cases, the only issue before the court is whether the decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. Even if the evidence could also support another conclusion, the decision of the ALJ must stand if the evidence could reasonably support the conclusion reached." Alexander v. Apfel, 17 Fed. Appx. 298 (6th Cir. 2001)(citing Buxton v. Halter, 246 F.3d 762, 772-73 (6th Cir. 2001)).

In order to qualify for disability benefits, a claimant must establish that he is disabled within the meaning of the Social Security Act. 42 U.S.C. § 423(a)(1)(D). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(2)(A).

The Social Security Act requires the Commissioner to follow a five-step process when making a determination on a claim of disability. Heston v. Commissioner of Social Security, 245 F.3d 528 (6th Cir. 2001). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity." Heston, 245 F.3d at 534 (citing Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990)(citing 20 C.F.R. § 404.1520(b)). Second, if the claimant is not engaged in substantial gainful activity, he must demonstrate that he suffers from a severe impairment. Id. "A 'severe impairment' is one which 'significantly limits . . . physical or mental ability to do basic work activities.'" Id. (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)). Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets or equals a listed impairment at 20 C.F.R. pt. 404, subpt. P, appendix 1, then the claimant is presumed disabled regardless of age, education or work experience. Id. (citing 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000)). Fourth, the claimant is not disabled if his impairment(s) does not prevent him from doing his past relevant work. Id. Lastly, even if the claimant cannot perform his past relevant work, he is not disabled if he can perform other work which exists in the national economy. Id. (citing Abbott, 905 F.2d at 923).

The claimant has the burden of establishing that he is disabled, but the Commissioner bears the burden of establishing that the claimant can perform other work existing in the national economy.

At the time of the hearing, the claimant was forty-two years old, completed the sixth grade in special education classes, and is illiterate. The claimant has prior relevant work experience as a farm worker, an employee for a tree trimming company and as a siding installer.

The claimant alleges that he became disabled on September 29, 2004 due to back pain, sleep apnea and illiteracy. An October 22, 2004 CT scan of lower extremity revealed a small benign bone cyst and minor osteoarthritic changes in both hips. A March 28, 2005 MRI revealed a small to moderate size left paracentral disk protrusion at the L4-5 level.

In May 2005, the claimant sought treatment for sleep apena. Dr. Dickerson diagnosed him with a septal deviation and obstructive sleep apnea. The claimant refused surgery, a nasal CPAP and a oral mandibular device, stating he "would rather be tired."

At the hearing on this application, the ALJ sought testimony from the claimant and a vocational expert. Upon hearing the testimony and reviewing the record, the ALJ performed the requisite five-step evaluation for determining disability.

At step one, the ALJ determined that the claimant had not been engaged in substantial gainful activity since the alleged onset of disability. At step 2, the ALJ determined that the claimant's back pain, sleep apnea and illiteracy are severe impairments.

At step 3, the ALJ determined that, although claimant has impairments that are "severe," he does not have an impairment or combination thereof that is listed in or equal to one listed at 20 C.F.R. pt. 404, subpt. P, appendix 1. The ALJ noted that a psychological consulting evaluator deferred a diagnosis and prognosis due to the claimant's suspected malingering. The ALJ gave the claimant the benefit of the doubt, however, as to his illiteracy.

At step 4, the ALJ found that the claimant did not have the capacity to perform any of his past relevant work and, therefore, moved to step five. At step 5, the ALJ found that the claimant has a residual functional capacity to perform a significant range of medium work but that his

ability to perform is compromised by nonexertional limitations. The ALJ asked the vocational expert whether there were any jobs in the economy that a person could perform who was claimant's age and had the same education, work history and RFC as the claimant. The vocational expert opined that given the limitations posed by the ALJ, a significant number of medium level jobs existed in the national economy that such a claimant could perform, including assembly (8,200 jobs in Kentucky and 397,000 jobs nationally) and janitorial/cleaning (14,300 jobs in Kentucky and 1,062,000 jobs nationally). In addition, the vocational expert identified a significant number of light exertion jobs that the claimant could perform, including factory/assembly work, (13,400 jobs in Kentucky and 702,400 jobs nationally). Based on this testimony, the ALJ found that the claimant was not disabled.

The claimant argues that the ALJ erred in failing to give the appropriate weight to the findings of his treating physicians, Drs. Jackson, Dickerson and Flinchum. The claimant argues that each of these doctors "saw claimant and found him to have problems." The court, however, finds that the ALJ extensively analyzed the doctors' medical records/reports and determined their credibility by looking at the objective medical records.

The regulations provide that a treating physician's opinion will not be given controlling weight unless it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §404.1527(d)(2); Wilson v. Commissioner of Social Security, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ does not find a treating source's opinion to be entirely credible, the ALJ may reject it, provided that good reasons are specified. Bogle v. Sullivan, 998 F.2d 342, 347-49 (6th Cir. 1993).

Here, the ALJ stated:

The documentary evidence of record establishes that during the period May 5, 2005 through June 1, 2005, Dr. Thad Jackson treated the claimant for complaints of low back pain and leg pain. On May 5, 2005, Dr. Jackson noted that magnetic resonance imaging (MRI) of the lumbar spine revealed degenerative disc disease at L4/5 and L5/S1 with a left L4/5 disc herniation[]. On June 1, 2005, Dr. Jackson assessed the claimant with L4/5 disc herniation with improved radiculopathy. Dr. Jackson noted there was no indication for surgery and he talked to the claimant about the possibility that he may not be able to return to a heavy labor job and should consider such things as vocational rehabilitation and potentially disability if his back pain got to the point where he was unable to lift. (Exhibits 4F and 7F). [Note: There is no evidence to support a finding that the claimant's back pain got to the point where he was unable to lift. The record indicates he continued to perform work activity.]

. . .

On September 30, 2005, Dr. Jeffrey W. Dickerson, M.D. assessed the claimant with obstructive sleep apnea and fatigue without hypersomnolence. The claimant was informed that his options were surgical, as he reported an inability to tolerate the nasal CPAP or an oral mandibular device. He refused both and reported he had [sic] rather be tired. (Exhibit 11F).

In March 2006 and April 2006, the claimant sought treatment at Carlisle Clinic for complaints of back pain. He was assessed with chronic low back pain and treated conservatively with medications. (Exhibit 12F).

On June 21, 2006, Dr. Ellen J. Flinchum, M.D. evaluated the claimant for complaints of low back pain. Musculoskeletal examination revealed normal gait without assistive device and cervical active range of motion within normal limits. The claimant was able to ambulate on his heels and toes. He had positive straight leg sitting on the left and negative on the right. Dr. Flinchum's diagnostic impression was low back pain, left hip pain, bilateral lumbosacral arthropathy, and left sacroiliac joint dysfunction. On July 21, 2006, the claimant was seen in follow-up. He reported good and ba[d] days. He said most of the time his pain is intermittent, throbbing, alleviated by walking, medications; aggravated by sitting/riding in a car. It was noted that Neurontin helps him sleep at night. Although injections were suggested as a treatment option, the claimant declined. (Exhibit 13F).

On September 7, 2006, Dr. Flinchum completed a physical capacities evaluation wherein she noted that her statements are a gross estimation and more accurate information should be obtained from a function capacity evaluation. No weight is given to Dr. Flinchum's evaluation since she even noted it was a "gross estimation." Furthermore, Dr. Flinchum's evaluation also appears to be inconsistent with the record that indicates the claimant is doing a lot of work, i.e., claimant reported on June 21, 2006 to Dr. Flinchum that his day to day activity included working/volunteering for a few hours daily,

> approximately five hours of activity per day.  It was noted at the hearing that the claimant's hands appeared heavily callused, indicative of work. (Exhibit 14F).

(AR 23-24).

The claimant argues that the treating physicians were completely ignored by the ALJ and that the ALJ failed to look at the entire record in reaching his decision.  The court disagrees.  The court finds that the ALJ stated sufficient reasons for discounting the physical capacities evaluation provided by Dr. Flinchum:  it was not an accurate portrayal of the claimant's functional ability, but a "gross estimation."  No other treating physician provided a report of claimant's functional capacity.

Further, although the ALJ gave no weight to the assessment from Dr. Flinchum, the ALJ did consider all the claimant's medical records in reaching his RFC determination.  Accordingly, the court finds that the ALJ did not err in limiting the weight afforded to the assessment provided by Dr. Flinchum.

The claimant also argues the ALJ erred in rejecting the testimony of the claimant.   The ALJ found that, although he found the claimant credible regrading the general nature of his impairments, he did not find the claimant credible in his assertion that his combined impairments precluded full-time work activity.  The ALJ stated that he regarded the claimant with diminished credibility because he gave inconsistent statements regarding his limitations and activities.  "Credibility determinations rest with the ALJ." Brewer v. Social Security Admin., 39 Fed. Appx. 252, 2002 WL 1379012 (6th Cir. 2002) (citing Siterlet v. Sec'y of Health & Human Servs., 823 F.2d 918, 920 (6th Cir. 1987)).  The ALJ observed:

> The claimant appeared at the hearing with heavily callused hands and when confronted

> about the condition of his hands, he finally admitted, "a feller [sic] has to do what he can to make ends meet." The Administrative Law Judge then learned that he mows the lawn with a push mower, and does tune-ups on his car and other mechanical work. He also was not very forthright about the windows he installed on a fixer upper house his son owns and in which the claimant and his wife live in.
> . . .
>
> His complaints of total disability are also inconsistent with his report at Exhibit 8F to be riding around with his buddy, fishing, hunting, and listening to coon dogs (hunting coon). Although he has been told he could have surgery to remove the obstruction [to his airways] he declined.

(AR 26).

The ALJ could properly determine that the claimant's subjective complaints were not fully credible in light of his ability to perform his daily activities. Blach v. Secretary of Health and Human Servs., 927 F.2d 228, 231 (6th Cir. 1990). The court finds the ALJ did not err in his credibility determination.

Lastly, the claimant argues that the ALJ erred in formulating the hypothetical question he posed to the vocational expert, but the claimant does not explain how the hypothetical question was deficient. The claimant also argues that the ALJ failed to consider the combined effect that all of his impairments have on his ability to function and his ability to hold a job for a significant period. The court disagrees.

It is well established that the ALJ's assessment of the claimant's residual functional capacity must be made only after all of a claimant's limitations have been taken into account. 20 C.F.R. § 416.945. In addition, a hypothetical question posed to a vocational expert must include a "complete assessment of [the claimant's] physical and mental state and should include an accurate portrayal of [his] individual physical and mental impairments." Howard v. Commissioner of Social Security, 276 F.3d 235, 239 (6th Cir. 2002)(quoting Varley v. Secretary

7

of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987)).  However, the ALJ is only required to incorporate those limitations he finds are credible.  Casey v. Secretary of Health & Human Servs., 987 F.2d 1230, 1235 (6th Cir.1993).

  In his hypothetical question, the ALJ told the vocational expert to consider a person with a sixth grade education, most likely illiterate, who is able to lift 50 pounds on occasion, 25 pounds more frequently, stand or walk six out of eight hours and sit six out of eight hours with no limits on pushing and pulling.  The ALJ also told the vocational expert to assume such a claimant can occasionally climb ropes, scaffolds and ladders, can crawl frequently, and can also climb ramps and stairs, balance, stoop, kneel, and crouch.  The vocational expert stated that unskilled work existed at the medium and light levels that a claimant with these restrictions could perform.

  The record supports the ALJ's RFC findings.  Two consulting physicians provided opinions of the claimant's functional capacity based upon their examination of the medical records.  Both physicians opined that the claimant could do medium work, with occasional climbing of ladders, ropes or scaffolds and occasional crawling.

  In addition, the claimant testified that his medications relieve his pain and that he does not wear a back brace or use a TENS unit.  He can mow the yard, perform his own car maintenance, hunt and fish.  He also told Dr. Flinchum that he worked or did volunteer activities a few hours a day and could be active at least five hours a day.

  The court finds that the functional limitations included in the hypothetical question are supported by substantial evidence and that it represents a sufficiently accurate portrayal of the claimant's impairments.  Based upon these limitations, the vocational expert opined that

significant jobs existed that the claimant can perform.

As discussed above, "the findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. Even if the evidence could also support another conclusion, the decision of the ALJ must stand if the evidence could reasonably support the conclusion reached." <u>Alexander v. Apfel</u>, 17 Fed. Appx. 298 (6th Cir. 2001) (citing <u>Buxton v. Halter</u>, 246 F.3d 762, 772-73 (6th Cir. 2001)).

The court holds that the findings of the ALJ are supported by substantial evidence. Accordingly, the claimant is not disabled within the meaning of The Social Security Act and the ALJ's decision is affirmed.

Therefore, the court being advised,

**IT IS ORDERED** as follows:

1. That the administrative decision be, and it hereby is, **affirmed** pursuant to sentence four of 42 U.S.C. § 405(g);

2. That the motion for summary judgment of the plaintiff (Doc. 9) be, and it hereby is, **denied**;

3. That the cross-motion for summary judgment of the Commissioner (Doc. 10) be, and it hereby is, **granted**; and

4. That a separate Judgment shall enter concurrently herewith.

This 13th day of February, 2008.



Signed By:
William O. Bertelsman  WOB
United States District Judge